

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 21, 2025

**BY ECF AND EMAIL**
The Honorable Laura Taylor Swain
United States District Judge, Chief
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *United States v. Nomma Zarubina*, 25 Cr. 179 (LTS)

Dear Chief Judge Swain:

      The Government respectfully submits this letter requesting that the Court modify defendant Nomma Zarubina's bail conditions to include an explicit prohibition on any contact with the special agents and other members of the Federal Bureau of Investigation (the "FBI") involved in this case (the "Case Agents").[1] In light of the defendant's unrelenting efforts to harass and intimidate the Case Agents, in violation of her conditions of release, and despite repeated warnings to the defendant through her counsel, such a condition is now necessary to reasonably assure the safety of others and the community. Defense counsel does not object to this request.

      **I.**    **Background**

      On or about November 19, 2024, the defendant was charged by Complaint with two counts of making false statements to FBI agents, including Case Agents-1 and -2, in violation of Title 18, United States Code, Section 1001(a)(2), and a warrant was issued for her arrest. (Dkt. No. 1.) As detailed in the Complaint, the defendant, a Russian national living in the United States, lied to the FBI about her relationship with Russian government officials and, more specifically, with an officer in the Federal Security Service of the Russian Federation (known as the "FSB"). On or about November 21, 2024, the defendant was arrested on the charges set forth in the Complaint, presented before United States Magistrate Judge Stewart D. Aaron, and released on bail, with certain conditions, including, as relevant here, a condition to "avoid all contact, directly, or indirectly, with any person who is or may be a victim or witness in the investigation or

---

[1] 

prosecution, including [n]o contact with foreign government officials other than Russian consulate officials." (*See* Dkt. Nos. 4, 5.)

On or about April 21, 2025, a grand jury sitting in this District returned an Indictment charging the defendant with (1) the same two counts as those in the Complaint of making false statements to FBI agents (Counts One and Two), (2) one count of conspiracy to violate the Mann Act (Count Three), (3) one count of conspiracy to violate the Travel Act (Count Four), both in violation of Title 18, United States Code, Section 371, based on the defendant's alleged participation in a scheme to transport women between New York and New Jersey, with the intent that such women engage in prostitution, and (4) naturalization fraud, in violation of Title 18, United States Code, Section 1015 (Count Five), based on the defendant's false representation on her pending application for naturalization in the United States that she has never "been a prostitute, or procured anyone for prostitution," when, in fact, the defendant has engaged in unlawful sexual activity, including prostitution offenses, as charged in Counts Three and Four of the Indictment. (Dkt. No. 17.) On April 30, 2025, the defendant was arraigned before the Court.

The defendant has been represented by counsel at certain times since at least February 2024.[2] Prior to her arrest in this case, and as reflected in the Complaint, the defendant, both directly and through counsel, voluntarily communicated with Case Agent-1 and other members of the FBI, including in in-person interviews with the FBI. The FBI has not communicated with or attempted to contact the defendant since her November 2024 arrest in this case. Since March 2025, however, the defendant has sent dozens of harassing text messages to Case Agent-1.[3] Case Agent-1 has not responded to any of these messages, which include messages sent in rapid succession, at all hours of the day and night. For example, on or about April 10, 2025, the defendant sent numerous, lengthy text messages to Case Agent-1, baselessly and incorrectly accusing Case Agent-1 of, among other things, trying to "emotionally humiliate" the defendant, and allowing "criminals . . . to obtain [U.S.] citizenship." The defendant also wrote to "remind" Case Agent-1 to "start looking into the judges at the DoJ, the police departments, and even your colleagues about their connections to massage places and long term relationships with slavic females involving money." Later that day, the defendant messaged Case Agent-1, "I am planning to buy used shoes from someone. Fingerprints are left on them, and it's possible to identify the person responsible. I intend to bring the shoes to court and request an investigation. This is just one example; unfortunately, no one seems interested in pursuing such matters. So sad, [Case Agent-1]. I was so inspired by you."

In addition, around this time, the defendant approached Case Agent-1 on the street and attempted to speak with him in person; the defendant was told that any contact with law enforcement needs to go through counsel.[4] On or about April 15, 2025, the Government emailed

---

[2] The defendant's current counsel has represented the defendant since her arrest in this case on or about November 21, 2024; prior to that, the defendant was represented by a different attorney.

[3] All the defendant's messages have been produced to the defense in discovery.

[4] ███████████████████████████████████████████████████████████████

defense counsel regarding the defendant's conduct and text messages, and reiterated that any contact with law enforcement had to go through the defense counsel.

Despite these warnings and the conditions of her pretrial release, the defendant continues to send inappropriate and harassing messages. For example, or about May 18, 2025, the defendant sent the following photograph by text messages to Case Agent-1:





On or about May 29, 2025, following additional text messages from the defendant to Case Agent-1 on or about May 28, 2025, the Government wrote to defense counsel again about the defendant's unsolicited text messages to the Case Agents, and defense counsel responded that he would "remind" the defendant to stop reaching out to the FBI. On or about May 31, 2025, the defendant, in a text message to Case Agent-1, wrote, "You can block my number, you don't need to report. We are adults."

On or about June 11, 2025, the defendant messaged Case Agent-1, in four separate back-to-back texts, "Are you here? I am just not sure if I remember the number. I have something Interesting!" On or about June 12, 2025, the Government wrote to defense counsel about the defendant's recent messages to Case Agent-1, noting that these messages were "escalating in nature and have gotten to the point of harassment." In addition, the Government informed defense counsel, "[w]e further understand that [the defendant] provided the FBI agent's contact information to a third party, who also attempted to contact the FBI agent." The Government explained that it would have to consider its options, including with respect to the defendant's bail conditions, if the defendant's conduct did not stop.

On or about June 15, 2025, the defendant sent approximately 15, lengthy back-to-back text messages to Case Agent-1, including, "You need to investigate your colleagues, or there will be

too many stories about what men do. But I am 34, and I am ok with all stories, the problem is – why you need it? No more problems? Or maybe a lack of professionalism? No spies? In counterintelligence? Maybe a personal reason?" The defendant continued:





Shortly thereafter, the defendant continued to send harassing communications to Case Agent-1, including the following 13 back-to-back text messages:



On or about June 26 and 27, 2025, in light of the defendant's continued efforts to harass the FBI, the Government contacted defense counsel and informed counsel that the Government was ready to request from the Court a modification of the current conditions of the defendant's pretrial release. Nevertheless, on or about July 12, 2025, late at night, the defendant, over a period of 15 minutes, sent Case Agent-1 the following 12 back-to-back text messages:



Accordingly, the Government now moves to have the defendant's pretrial release conditions modified to explicitly address the defendant's threatening behavior.

II. **Legal Standard**

Under the Bail Reform Act, the Court shall order the pretrial release of a defendant unless the Court "determines that such release will not reasonably assure the appearance of the [defendant] as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). In "determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must consider: (1) the nature and circumstances of the offenses charged,

(2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

If the Court finds that detention is not warranted, it must set conditions that are "the least restrictive" to reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). Bail conditions are not set in stone. The Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). When considering an application to modify a defendant's bail conditions, the Court considers "the statutory standards applicable to the setting of bail." *United States v. Zuccaro*, 645 F.2d 104, 106 (2d Cir. 1981). "Courts have found that the authorization to amend a release order in Section 3142(c) is based on the possibility that a changed situation or new information may warrant altered release conditions." *United States v. Dzhamgarova*, No. 21 Cr. 58, 2021 WL 3113036, at *1 (S.D.N.Y. July 21, 2021) (internal quotation marks and citation omitted); *accord United States v. Bankman–Fried*, No. 22 Cr. 673, 2023 WL 1490417, at *2 (S.D.N.Y. Feb. 1, 2023). "Accordingly, '[c]onditions of bail should properly be modified if a substantial change in circumstances as they existed at the time bail was fixed is clearly shown.'" *Id.* (quoting *United States v. Falcetti*, No. 02 Cr. 140, 2002 WL 31921179, at *1 (E.D.N.Y. Oct. 31, 2002)).

### III. <u>Argument</u>

The Court should modify the defendant's bail conditions to include an express prohibition on contacting, or having any third parties contact, the Case Agents, other than through defense counsel. While this proposed modification is already covered by the prohibition on contacting potential witnesses in this case, it is abundantly clear that the defendant has no mind for that condition given her continuing, escalating, violations. Thus, such a modification is necessary to reasonably assure the safety of others and the community, and, if the defendant continues to flaunt the Court's conditions, the Government anticipates that it will seek more restrictive conditions or, potentially, remand in advance of trial.

As an initial matter, the defendant's text messages to Case Agent-1 violate the current bail condition requiring the defendant to "avoid all contact, directly, or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution." That is because the defendant is charged in this case with, among other things, lying to FBI agents, including to Case Agent-1; Case Agent-1, therefore, is a potential victim and/or witness in this investigation and prosecution. For the avoidance of any doubt, however, the Court should add a bail condition prohibiting contact with any of the Case Agents, other than through counsel. This condition is consistent with the requirement that the defendant "avoid all contact" with potential witnesses and victims in this case, which is a standard condition that courts routinely impose in cases in this District.

As detailed in part above, since March 2025, the defendant has sent Case Agent-1 numerous text messages, that range from erratic to threatening. These messages are sent at all hours of the day and night, often in rapid succession. Case Agent-1 has not responded to these messages, and the Government has admonished the defendant, through counsel, numerous times that this conduct must stop. Despite Case Agent-1's silence and the Government's admonishments, the defendant has continued to contact Case Agent-1, including by sending him a

dozen messages in the span of 15 minutes, late at night, last week. Those messages were completely inappropriate, suggesting that there is a romantic relationship between the defendant and Case Agent-1, and were sent for no apparent purpose other than to harass Case Agent-1. The defendant's latest text messages, coupled with the dozens of other messages she has sent Case Agent-1 in the past several months, are very concerning. Some are outright threatening. But, even aside from their substance, the sheer number and timing of the messages, show that they are clearly meant to harass. This must stop. Accordingly, the Government respectfully requests that the Court modify the terms of the defendant's pretrial release to include a prohibition on any contact with the Case Agents, other than through the defendant's attorney.[5] This is a minimally intrusive but important bail condition that is now necessary to reasonably ensure the safety of others and the community while the defendant is out on pretrial release.[6]

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: _____/s/_____
Sarah L. Kushner / David J. Robles / Henry Ross
Assistant United States Attorneys
(212) 637-2676

cc: Kristoff Isiah Williams (by ECF and Email)

---

[5] Should the Court impose this condition and the defendant violate it, the Government will likely seek additional relief from the Court, including potentially requesting a condition prohibiting the defendant from using any electronic devices and/or seeking the defendant's pretrial detention.

[6] In her messages, the defendant has implied that Case Agent-1 can simply "block" communications from the defendant. That, however, is not an adequate or appropriate resolution. Among other things, as noted above, the defendant provided Case Agent-1's contact information to a third party, who also attempted to contact Case Agent-1. Therefore, simply blocking the defendant's current phone number will not prevent the defendant from contacting and harassing Case Agent-1, through third parties or other means, including through additional phone numbers that the defendant may easily gain access to.